UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL CASE NO. 3:24-CR-0051-B |
| | § | |
| | § | |
| MARLIN CHRISTOPHER HOBSON, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Marlin Christopher Hobson's Motion for a *Franks* Hearing (Doc. 48). For the following reasons, the Motion is **DENIED**.

### I.

### BACKGROUND

In this firearms case, the Government charges Hobson with one count of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(8), which make it a crime for a convicted felon to possess a firearm or ammunition. Doc. 16, Indictment, 1. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents executed a warrant to search Hobson's car and apartment, where they found firearms and ammunition. Doc. 1, Compl., 9.[1]

To obtain the search warrant, ATF Task Force Officer Fernando Garcia signed an affidavit, *see generally* Doc. 51-1, Affidavit, that provided reasons for the Magistrate Judge to find probable cause that a search of Hobson's car and residence would reveal evidence that he violated § 922(g)(1).[2]

---

[1] The numbers referencing the Complaint refer to ECF pagination.

[2] Garcia also applied to search for evidence of an 18 U.S.C. § 932 violation, purchasing a firearm for a prohibited person. Doc. 51-1, Affidavit, 1. This Order does not discuss § 932 because the Order only relates to the crimes for which Hobson is charged.

*See id.* ATF began investigating Hobson after tracing bullets from a November 2023 shooting to a firearm bought by Hobson's girlfriend. Doc. 51-1, Affidavit, 5.[3] In January 2024, Garcia learned that Hobson's girlfriend bought another firearm. *Id.* at 6. Dallas police began surveilling Hobson's apartment 30 minutes after Hobson's girlfriend bought the gun. *Id.* at 6. Thirty minutes later, Dallas police observed Hobson and his father leave Hobson's apartment and drive away in his car. *Id.* Police followed them to an Academy Sports store ("Academy"), where they saw Hobson hold ammunition and then stand next to his father while his father purchased the ammunition. *Id.* at 6–7. An officer then observed Hobson bring an Academy plastic bag into his apartment. *Id.* at 7. Hobson and his girlfriend lived together at the apartment. *Id.* at 5–6. Finally, the affidavit describes the evidence ATF expected to find: ammunition, firearms, and evidence that Hobson was selling them. *Id.* at 17.

Hobson moves for a *Franks* hearing to determine whether the warrant was issued based on false statements. *Id.* at 1–2; *see Franks v. Delaware*, 438 U.S. 154 (1978). The Court considers the Motion below.

## II.

## LEGAL STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. "[T]he Fourth Amendment entitles a defendant to a hearing on the veracity of a warrant affidavit if he can make a sufficient preliminary showing that the affiant

---

[3] The numbers referencing Garcia's Affidavit refer to ECF pagination.

officer obtained the warrant by recklessly including material falsehoods in a warrant application." *Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (quoting *Franks*, 438 U.S. at 171–72).

### III.

### ANALYSIS

The Court **DENIES** Hobson's Motion for a *Franks* Hearing. The purpose of a *Franks* hearing is to determine the truthfulness of an affidavit supporting a warrant. *See Franks*, 438 U.S. at 171. Such an affidavit is presumed to be valid. *Id.* Therefore, to qualify for a *Franks* hearing, a defendant must make a preliminary showing that: (1) an affidavit contained a falsehood; (2) the falsehood was made deliberately or with reckless disregard for the truth; and (3) the affidavit would fail to establish probable cause if the false statement were excised. *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017). So even if a defendant shows that an affidavit supporting a warrant contained a deliberate or reckless falsehood, "he is not entitled to a hearing if," absent the falsehood, "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *United States v. Brown*, 298 F.3d 392, 395–96 (5th Cir. 2002). Mere allegations of falsehoods are not enough. A defendant must "provide 'an offer of proof—i.e., 'a statement of supporting reasons.'" *United States v. Green*, No. 3:19-CR-012-S, 2019 WL 6346924, at *3 (N.D. Tex. Nov. 26, 2019) (Scholer, J.) (quoting *Winfrey v. San Jacinto Cty.*, 481 F. App'x 969, 980 (5th Cir. 2012)).

Hobson did not make a preliminary showing that Garcia's affidavit contained deliberate or reckless falsehoods. And even if he did, the affidavit would support probable cause with the challenged portions excised. Therefore, he is not entitled to a *Franks* hearing.

A.    *Garcia's Statements Were Not Deliberate or Reckless Falsehoods.*

First, Hobson failed to give an offer of proof that Garcia's statements were deliberate or reckless falsehoods. The Court considers Garcia's statements about the 2023 shooting, the police's surveillance of Hobson, and the ammunition's visibility in the Academy plastic bag.

1.    Statements About the 2023 Shooting Were Not Deliberate or Reckless Falsehoods.

Hobson first alleges Garcia's statements about the November 2023 shooting contained material omissions. A material omission is a false statement. *See United States v. Kendrick*, 980 F.3d 432, 441 (5th Cir. 2020) (considering material omitted from a warrant to determine whether a defendant was entitled to a *Franks* hearing). The affidavit stated that "ATF began investigating Hobson . . . for firearms violations" in November 2023 because he "was a suspect in a shooting." Doc. 51-1, Affidavit, 5. Hobson argues this statement contains a material omission because it could mislead the judge reviewing the warrant application "into believing Mr. Hobson was the shooter or was somehow involved in the use or possession of a firearm" when in fact, police determined he was not the shooter. Doc. 48, Mot., 3.

The Court finds this was not a deliberate or reckless material omission. Garcia noted that Hobson was a suspect in the shooting to explain why he began investigating Hobson—not to recklessly imply that Hobson was still a suspect. Indeed, Garcia applied for a search warrant not to investigate the shooting, but to investigate a felon in possession of ammunition charge under § 922(g)(1). Doc. 51-1, Affidavit, 1. And the ammunition at issue was for a different gun than the one used in the shooting. Therefore, omitting that Hobson was no longer a suspect did not constitute a material omission.

Hobson alleges Garcia's statements about the November 2023 shooting contain additional misleading statements. The affidavit explains that "[t]he [November 2023] shooting was never prosecuted because the victims were not cooperative." Doc. 51-1, Affidavit, 5. Hobson argues this is misleading because the police report explains "the victim 'did not want to proceed with this investigation and had no interest in moving forward with this case . . . [because the victim] stated he only wanted to get his gun back as soon as possible because he was planning on moving to Houston in Jan.'" Doc. 48, Mot., 4 (quoting police report narrative). And "the two witnesses interviewed, according to the police report narrative, could not identify the shooter." *Id.*

These statements were not falsehoods, and in any event, were not deliberate or reckless falsehoods. Garcia stated that the victim was not cooperative, and the police report says the victim "did not want to proceed with this investigation." *Id.* The Court does not see a meaningful distinction between a victim stating he "ha[s] no interest in moving forward with this case" and being uncooperative. *Id.* Regardless, the Court finds it reasonable to equate not wanting to proceed with an investigation with being uncooperative. And the fact that the *witnesses* could not identify the shooter does not make it false to state that the *victim* was uncooperative. *See id.* Accordingly, Hobson failed to allege Garcia attested to a deliberate or reckless falsehood.

2.    The Surveillance Account Did Not Contain Deliberate or Reckless Falsehoods.

Hobson next argues that there were "fabrication[s] and ambiguit[ies] in [the] surveillance account." *Id.* Garcia attests:

> After the purchase [of ammunition], HOBSON and the U/M [Hobson's father] exited the store and U/M placed the Academy plastic bag with the box of ammunition inside the SUBJECT VEHICLE'S trunk. Both individuals get in the SUBJECT VEHICLE and begin driving back toward the SUBJECT PREMISES. DPD Covert officers continued following the SUBJECT VEHICLE back to the SUBJECT PREMISES. DPD Officer Tamargo observed HOBSON exit the driver's

> door, walk to the trunk, retrieve the Academy plastic bag with the box of ammunition inside, and walk inside the SUBJECT PREMISES. The plastic bag is clear enough to where Officer Tamargo can see the box of ammunition inside as HOBSON walks into the SUBJECT PREMISES. The U/M remained in the SUBJECT VEHICLE.

Doc. 51-1, Affidavit, 7. Hobson argues this account "does not identify nor mention that anyone 'observed' the U/M place the Academy plastic bag with the box of ammunition inside the SUBJECT VEHICLE'S trunk." Doc. 48, Mot., 5. Because Garcia explicitly mentioned which officer observed other things but failed to mention who saw Hobson's father place the bag into the trunk, Hobson argues it likely was not observed by anyone. *Id.* Moreover, Garcia only obtained surveillance footage from the store—not the parking lot. So Garcia himself could not have observed Hobson's father placing the Academy bag in the trunk. *Id.* at 6. Furthermore, the ATF Report says Hobson and his father went to pay for the ammunition and then began driving home, but the Report does not mention that Hobson's father put the bag of ammunition in the trunk. *Id.* at 5. Hobson thus submits that the statement that his father put the Academy plastic bag with the box of ammunition into the trunk "is a fabrication to fit law enforcement's narrative." *Id.*

These arguments fail to make a preliminary showing of a reckless or deliberate falsehood. The surveillance footage depicts Hobson's father holding and paying for the ammunition. Doc. 51-1, Affidavit, 9. And the account notes that "Officer Tamargo observed HOBSON . . . walk to the trunk [and] retrieve the Academy plastic bag with the box of ammunition inside." *Id.* at 7. Thus, Garcia could reasonably infer that Hobson's father—who paid for the ammunition—placed the Academy bag in the trunk. And an ambiguity about whether the placement of the bag into the trunk was observed does not constitute a reckless or deliberate falsehood. *See United States v. Butler*, CR. No. 17-140-JWD-RLB, 2018 WL 3848406, at *10 (M.D. La. Aug. 13, 2018) ("[T]he 'challenged

statement, though ambiguous, reasonably could and should be read truthfully.'" (quoting *United States v. Singer*, 970 F.2d 1414, 1417 (5th Cir. 1992)).

Hobson also argues that he and his father did not drive directly home and instead made several stops. Doc. 48, Mot., 6. Meanwhile, Garcia attests that both people got into the car at Academy "and beg[an] driving back toward the SUBJECT PREMISES," while "[c]overt officers continued following the SUBJECT VEHICLE back to the SUBJECT PREMISES." Doc. 51-1, Affidavit, 7. Because the affidavit does not mention that Hobson made stops before going to his apartment, Hobson argues it "leaves open the question whether the DPD covert officers maintained a visual on Mr. Hobson, his father, and his vehicle the whole time, without gaps, from leaving Academy to his eventual arrival at the apartment." Doc. 48, Mot., 6.

Here, Hobson fails to offer any proof of a falsehood. Even if Hobson and his father did stop before arriving at his apartment, the affidavit could be read to capture this. Stating that "[c]overt officers continued following the SUBJECT VEHICLE back to the SUBJECT PREMISES" does not exclude the possibility that officers followed the vehicle as it made stops, eventually arriving at his apartment. *See* Doc. 51-1, Affidavit, 7. *See Green*, 2019 WL 6346924, at *3 ("Defendant is not entitled to a *Franks* hearing even if the precise interpretation of [an] account might be debatable."). Accordingly, the Court finds Garcia's account of the surveillance does not contain reckless or deliberate falsehoods.

### 3.    Garcia's Statement on the Ammunition's Visibility Was Not a Falsehood.

Hobson finally alleges that Garcia's statement that the ammunition was visible through the plastic bag contains "omissions and ambiguous assertions." Doc. 48, Mot., 7. Garcia attested that "Officer Tamargo observed HOBSON . . . retrieve the Academy plastic bag with the box of

ammunition inside," and "[t]he plastic bag is clear enough to where Officer Tamargo can see the box of ammunition inside." Doc. 51-1, Affidavit, 7. Hobson argues that because the bag was white—not clear—and Hobson also purchased a phone holster that came in a rectangular box, Officer Tamargo might have presumed that the rectangular box contained ammunition. Doc. 48, Mot., 6–7. Hobson also contends Garcia "omits critical details such as lighting conditions, viewing distance, and observational clarity." *Id.* at 7.

Hobson again fails to allege a deliberate or reckless falsehood. Stating that the bag was "clear enough" is not a falsehood—it does not imply that the bag was clear instead of white. It implies that the bag was translucent—clear enough to see through, but not completely clear. Furthermore, Garcia could fairly infer that the bag was clear enough for Officer Tamargo to observe its contents. If Officer Tamargo's report said that he observed Hobson retrieve the Academy plastic bag containing the box of ammunition, Garcia could infer that the bag was clear enough for Tamargo to make this observation. Such an inference does not amount to a reckless or deliberate falsehood. And while detailing the lighting conditions and viewing distance may have bolstered the affidavit, omitting these details did not constitute a falsehood or material omission. Accordingly, Hobson is not entitled to a *Franks* hearing.

B.    *Garcia's Affidavit Supported Probable Cause Even Without the Challenged Statements.*

Even if Hobson had offered proof that Garcia's affidavit included deliberate or reckless falsehoods, he would still not be entitled to a *Franks* hearing, because the affidavit supports probable cause without those statements. *See Brown*, 298 F.3d at 395–96.

"Probable cause does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United*

*States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (citation omitted). "Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime." *Kohler*, 470 F.3d at 1109 (citation omitted). "The officer's supporting affidavit must make it apparent, therefore, that there is some nexus between the items to be seized and the criminal activity being investigated." *Id.*

Garcia obtained a warrant to search for evidence of Hobson possessing a firearm or ammunition. *See* Doc. 51-1, Affidavit, 1. Even without the challenged statements, the affidavit would still provide sufficient information for the Magistrate Judge to find probable cause that Hobson was a felon in possession and that the evidence sought would relate to that crime.

First, Garcia provided facts that established Hobson's criminal history prohibits him from possessing ammunition. *Id.* at 5. Next, Garcia attests ATF began investigating Hobson because bullets from a November 2023 shooting were traced to a firearm that Hobson's girlfriend bought, and Hobson lives with his girlfriend at their apartment. *Id.* Garcia then learned that Hobson's girlfriend bought a firearm again in January 2024. *Id.* The same day Hobson's girlfriend bought the firearm, Hobson went to the store and compared different types of ammunition. *Id.* At 6–7. Hobson then picked up a box of ammunition that is compatible with the firearm his girlfriend bought earlier that day, took it to the register, and stood next to his father while his father paid for it. *Id.* at 7. Garcia explained that Hobson then carried a bag labeled "Academy Sports," where Hobson's father paid for the ammunition, into his apartment. *Id.*

The Court finds these unchallenged statements sufficient to support probable cause. Based on this information, the Magistrate Judge could reasonably infer that Hobson was in possession of

ammunition, in violation of § 922(g)(1). *See United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987) (noting that to determine probable cause, a magistrate "may draw reasonable inferences from the material he receives"). And the evidence to be searched and seized—firearms, ammunitions, and records of selling these items—relates to the suspected crime: possession of ammunition by a convicted felon. *See Kohler*, 470 F.3d at 1109. Accordingly, the affidavit would support probable cause even if the challenged statements were excised. Therefore, Hobson is not entitled to a *Franks* hearing. *See Brown*, 298 F.3d at 395–96.

## IV.

## CONCLUSION

For the foregoing reasons, Hobson's Motion for a *Franks* Hearing (Doc. 48) is **DENIED**.

**SO ORDERED.**

**SIGNED: June 5, 2025.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE